1   David Borgen (SBN 099354)
       *Of Counsel*
2   dborgen@gbdhlegal.com
    James Kan (SBN 240749)
3   jkan@gbdhlegal.com
    Katharine Fisher (SBN 305413)
4   GOLDSTEIN, BORGEN, DARDARIAN & HO
    300 Lakeside Drive, Suite 1000
5   Oakland, CA 94612
    Tel: (510) 763-9800
6   Fax: (510) 835-1417

7   Michael Malk (SBN 222366)
    mm@malklawfirm.com
8   MICHAEL MALK, ESQ. APC
    1180 S. Beverly Drive, Suite 302
9   Los Angeles, California 90035
    Tel: (310) 203-0016
10  Fax: (310) 499-5210

11  Attorneys for Plaintiff and the Putative Class

12

13                      UNITED STATES DISTRICT COURT

14                     NORTHERN DISTRICT OF CALIFORNIA

15  PAUL YALE, individually and on behalf of others    Case No.: 5:15-CV-06337-EJD
    similarly situated,
16                                                     CLASS, COLLECTIVE AND
                                                       REPRESENTATIVE ACTION
17          Plaintiff,

18  vs.                                                **PLAINTIFF'S OPPOSITION TO
                                                       DEFENDANT'S MOTION TO DISMISS
19  WIZARDS OF THE COAST, LLC,                         FIRST AMENDED COMPLAINT**

20          Defendant.                                 Date:   June 9, 2016
                                                       Time:   9:00 a.m.
21                                                     Dept:   4, 5th Floor
                                                       Before: Hon. Edward J. Davila
22

23                                                     Complaint Filed:   October 29, 2015
                                                       FAC Filed:         January 19, 2016
24                                                     Trial Date:        None Set

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 1

II. STATEMENT OF FACTS ......................................................................... 1

    A. As a Judge, Plaintiff Performed Valuable Work For Wizards That Benefitted Wizards. ......................................................................... 1

    B. Plaintiff Was Subject to Wizards' Rules and Control. ......................... 2

    C. Wizards Provides Judges With Non-Cash Compensation for Their Judging of Tournaments .............................................................. 4

III. PROCEDURAL HISTORY ....................................................................... 4

IV. ARGUMENT ............................................................................................ 5

    A. Legal Standard ..................................................................................... 5

    B. The FAC Sufficiently Alleges Violations of the California Law. ........ 6

        1. Plaintiff Is Presumed An Employee for Performing Labor Benefiting Wizards. ........................................................................ 6

        2. The FAC's Allegations Make Clear that Judges Are Not Volunteers Under California Law. ............................................... 7

        3. The FAC Sufficiently Alleges that Wizards Is Plaintiff's Employer. .... 8

            a. The FAC Alleges That Wizards Exercised Control Over Plaintiffs' Wages, Hours or Working Conditions. ................ 8

            b. The FAC Alleges That Wizards Suffered or Permitted the Judges to Work. ........................................................... 13

            c. The FAC Properly Alleges that Wizards "Engaged" Plaintiff to Work, Creating a Common Law Employment Relationship ..... 14

    C. The FAC Plausibly Supports a Claim Under the FLSA. ..................... 15

        1. *Alamo's* Economic Realities Standard Requires the Court to Deny Wizards' Motion to Dismiss. ........................................ 16

        2. The Department of Labor Follows the Mandate of *Alamo* ......... 17

        3. The FAC's Allegations Regarding the Economic Reality of Judges Confirms That They Are Employees Under the FLSA. ............ 18

            a. The FAC Alleges that Wizards Has the Right to Hire and Fire. ... 19

            b. The FAC Alleges that Wizards Exercised Supervision and Control Over Judges. ............................................... 20

c.  The FAC Alleges That Wizards Determined Methods of Compensation for Judges. ...............................................20

d.  The FAC Alleges That Wizards Required Its Judges To Document Participation In Their Tournaments. ...........................21

D.  At a Minimum, the Court Should Grant Plaintiff Leave to Amend the FAC. ......21

V.  CONCLUSION ..............................................................................................22

612771.9
612771.11

**Federal Cases**

*Barrentine v. Arkansas-Best Freight System, Inc.*,
    450 U.S. 728 (1981) ...................................................................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................................5

*Betancourt v. Advantage Human Resourcing*,
    No. 14-cv-01788-JST, 2014 WL 4365074 (N.D. Cal. Sept. 3, 2014) ...................... *passim*

*Bonnette v. Cal. Health & Welfare Agency*,
    704 F.2d 1465 (9th Circ. 1983) .....................................................................18, 19, 20, 21

*Bureerong v. Uvawas*,
    922 F. Supp. 1450 (C.D. Cal. 1996) ..............................................................................5

*Cotter v. Lyft, Inc.*,
    60 F. Supp. 3d 1067 (N.D. Cal. 2015) ...............................................................5, 10, 11

*Eldridge v. Block*,
    832 F.2d 1132 (9th Cir. 1987) .....................................................................................21

*Ferdik v. Bonzelet*,
    963 F.2d 1258 (9th Cir. 1992) .......................................................................................4

*Garcia v. San Antonio Metro Transit Auth.*,
    469 U.S. 528 (1985) ...................................................................................................19

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) .........................................................................................5

*Hale v. State of Arizona*,
    967 F.2d 1356 (9th Cir. 1992) .....................................................................................16

*Jeung v. Yelp, Inc.*,
    No. 15-cv-02228-RS, 2015 WL 4776424 (N.D. Cal. Aug. 13, 2015) ...................12, 21

*Liebesman v. Competitor Group, Inc.*,
    No. 4:14-CV-1653 RLW, 2015 WL 2195093 (E.D. Mo. May 11, 2015) ...............1, 18, 19

*Miller v. Farmers Ins. Exch.*,
    481 F.3d 1119 (9th Cir. 2007) .....................................................................................18

*Moss v. United States Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) .........................................................................................2

612771.11

*Nationwide Mut. Ins. Co. v. Darden*,
 503 U.S. 318 (1992) ................................................................................16

*Nunez v. City of San Diego*,
 114 F.3d 935 (9th Cir. 1997) ..................................................................12

*Ochoa v. McDonalds Corp.*,
 No. 14-cv-02098-JD, 2015 WL 5654853 (N.D. Cal. Sept. 25, 2015)........12

*Okoro v. Pyramid 4 Aegis*,
 No. 11-C-267, 2012 WL 1410025 (E.D. Wis. Apr. 23, 2012) .............18, 19

*Purdham v. Fairfax Cty. Sch. Bd.*,
 637 F.3d 421 (4th Cir. 2011) ..................................................................18

*Real v. Driscoll Strawberry Assoc., Inc.*,
 603 F.2d 748 (9th Cir. 1979) ..................................................................15

*Tony & Susan Alamo Found. v. Sec'y of Labor ("Alamo")*,
 471 U.S. 290 (1985) ............................................................16, 17, 19, 20

*United States v. Redwood City*,
 640 F.2d 963 (9th Cir. 1981) ....................................................................5

*Walling v. Portland Terminal Co.*,
 330 U.S. 148 (1947) ................................................................................16

*Williams v. Strickland*,
 87 F.3d 1064 (9th Cir. 1996) ............................................................20, 21

*Zavala v. Wal Mart Stores Inc.*,
 691 F.3d 527 (3d Cir. 2012) ....................................................................18

*Zavala v. Wal-Mart Stores, Inc.*,
 393 F. Supp. 2d 295 (D.N.J. 2005) .........................................................18

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009) ....................................................................5

**State Cases**

*Futrell v. Payday California, Inc.*,
 190 Cal. App. 4th 1419 (2010) ................................................................14

*Malloy v. Fong*,
 37 Cal. 2d 356 (1951) ..............................................................................14

*Martinez v. Combs*,
 49 Cal. 4th 35 (2010) ................................................................8, 9, 13, 14

612771.11

*Morillion v. Royal Packing Co.*,
    22 Cal. 4th 575 (2000) ..............................................................................................7

*Olmstead v. Home Depot U.S.A., Inc.*,
    No. B248296, 2015 WL 1791440 (Cal. Ct. App. Apr. 17, 2015) ...........................12

*Perguica v. Ind. Acc. Com.*,
    29 Cal. 2d 857 (1947) ............................................................................................14

*S.G. Borello & Sons, Inc. v. Dept. of Indus. Relations*,
    48 Cal. 3d 341 (1989) ............................................................................................14

**Federal Statutes**

29 U.S.C.
    § 203(d) ..................................................................................................................15
    § 203(e)(1) ..............................................................................................................15
    § 203(e)(2)-(e)(4) ...................................................................................................15
    § 203(g) ..................................................................................................................16
    § 206 (a) .................................................................................................................15

Fair Labor Standards Act ............................................................................................ *passim*

**State Statutes**

Cal. Lab. Code
    Private Attorney General Act ...................................................................................4
    § 1194 ......................................................................................................................8
    § 2750.5 ...................................................................................................................6
    § 3357 ......................................................................................................................6

**Rules**

Fed. R. Civ. P.
    12(b)(6) ....................................................................................................................5
    15 ............................................................................................................................21

**Regulations**

29 C.F.R.
    §§ 553.101(a) .........................................................................................................15
    §§ 553.101(c) .........................................................................................................15
    § 785.11 ..................................................................................................................16

**Other Authorities**

Department of Labor Opinion Letter Fair Labor Standards Act, 1999 WL 1788145
    (Aug. 19, 1999) ......................................................................................................17

Department of Labor Opinion Letter Fair Labor Standards Act, 2002 WL 32406599
    (Oct. 7, 2002)............................................................................................................17

DLSE Op. Letter at 1 (Oct. 27, 1988), available at
    http://www.dir.ca.gov/dlse/opinions/1988-10-27.pdf ........................................................7

DOL elaws – Fair Labor Standards Act Advisor, Volunteers, *available at*:
    http://webapps.dol.gov/elaws/whd/flsa/docs/volunteers.asp (last visited Feb. 13,
    2016)......................................................................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

612771.11

# I.    INTRODUCTION

Plaintiff Paul Yale's ("Plaintiff") class, collective and representative action arises from Defendant Wizards of the Coast, LLC's ("Wizards" or "Defendant"), attempt to evade non-waivable California and federal labor laws that guarantee workers the right to minimum wages and other protections.  Wizards engages in the unlawful practice of using unpaid Judges to serve as arbiters over its tournaments thereby exploiting the free labor of Judges and furthering its for-profit operations.

Wizards moves to dismiss based on two arguments, both of which the Court should reject. First, Wizards claims that Plaintiff and its Judges are not "employees" within the meaning of the California Labor Code ("Labor Code") and the Fair Labor Standards Act ("FLSA").  Second, ignoring the detailed allegations of the First Amended Complaint ("FAC") Wizards contends that Plaintiff's allegations are conclusory and fail to plausibly support his claims.

The Supreme Court and California courts have held that private, for-profit companies like Wizards cannot lawfully solicit and accept unpaid productive work.  Accordingly, courts, like *Liebesman v. Competitor Group, Inc.*, No. 4:14-CV-1653 RLW, 2015 WL 2195093, at *6 (E.D. Mo. May 11, 2015) and *Betancourt v. Advantage Human Resourcing*, No. 14-cv-01788-JST, 2014 WL 4365074, at *4-5 (N.D. Cal. Sept. 3, 2014), have denied motions to dismiss where the plaintiffs sufficiently alleged performance of work not only under the control of the defendant, but also the type of work where the economic realities confirm employment status.  Here too, Plaintiff sufficiently pleads claims under both California law and the FLSA, alleging facts supporting Wizards' control of his working conditions, knowingly permitting him to work without remuneration, and subjecting him to their comprehensive rules.  As a result, Defendant's Motion should be denied.

# II.    STATEMENT OF FACTS

## A.    As a Judge, Plaintiff Performed Valuable Work For Wizards That Benefitted Wizards.

Wizards is a private sector, for-profit enterprise that sells products relating to a collectible card game called Magic the Gathering ("Magic").  First Amended Complaint ("FAC") ¶ 8, ECF No. 14. Plaintiff worked as an unpaid Judge for Wizards, overseeing its highly regulated system of tournaments and game nights relating to Magic.  *Id.*, ¶¶ 6, 9.  These events are used by Wizards as a marketing tool to actively engage players in Magic and to provide it with a means to sell its products.

*Id.*, ¶¶ 8-9. Wizards charges Judges with the responsibility of being the arbiters of Magic tournaments by ensuring that the game is played fairly and that players adhere to Wizard's rules. *Id.*, Ex. 5.[1] As Wizards concedes, the life of a judge means "getting into an interesting activity that's both fun and a lot of work." *Id.*, Ex. 5 (advising Judges to study and prepare themselves "for the events in which you will work."). Wizards' website contains a link called "Find a Judge" where store operators can go to find a judge to work at tournaments in their stores. *Id.*, ¶ 14, Ex. 4.[2]

In addition to their work at tournaments, Judges work on behalf of Wizards as representatives to retailers and players, providing them with customer service, instruction, and support. *Id.*, ¶ 16. Judges are mandated to submit reports to Wizards regarding retailers' compliance with its policies. *Id.* As representatives of Wizards, "[t]he behavior of judges toward the Magic community affects [Wizard's] ability to act as trusted experts at events" because they "represent the Judge Program and the Magic community." *Id.*, Ex. 6. Unsurprisingly, Wizards describes these events and the Judge's critical role in organizing them as the "lifeblood of the game since the beginning." *Id.*, ¶ 14, Ex. 3.

**B.** **Plaintiff Was Subject to Wizards' Rules and Control.**

Wizards operates a Judge Certification Program which develops and administers a rigorous judge testing system. *Id.*, ¶ 10, Ex. 2. Becoming a certified Judge requires participation in certain events (such as tournaments), passing an in-person interview, passing a written exam, and obtaining a letter of recommendation from an existing Level 2 or higher Judge. *Id.*, ¶ 11, Ex. 2.

Through the Judge Certification Program Wizards maintains a hierarchal judicial system of Judge Levels from one to five, with increasing work requirements at each level. *Id.* Other components of the Judges' work include administering tests, interviewing, mentoring, training and evaluating lower level judges, and preparing reports for submission to Wizards relating to their judging experiences. *Id.*, ¶¶ 10-11, Ex. 5.

---

[1] All exhibit references herein relate to the First Amended Complaint unless otherwise stated.

[2] Wizards' attempts to distance itself from the Exhibits attached to the FAC are unavailing because, in the context of a motion to dismiss, the Court must accept as true all the allegations asserted and all reasonable inferences therefrom. *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Moreover, many of the documents show on their face that they are copyrighted by Wizards. *See* FAC, Exs. 2, 5, 7.

Wizards also maintains a system of detailed job duties and guidelines for all of its Judges. *Id.*,

2  ¶¶ 14, 15 Exs. 5, 7. Wizards provides Judges with the information about the game and card sets

3  required by the position as well as tools for improving those same judging skills. *Id.*, Ex. 2. In

4  addition to understanding the rules of the game, its procedures, and infractions and penalties that arise

5  from tournaments, Wizards also councils Judges to have "team spirit," exhibit patience with other

6  people, and engage in open communication. *Id.* Wizards expects Judges to keep up with Wizards

7  announcements, directives, instructions, rulings, and discussions regarding the game. *Id.*, ¶ 11. To

8  acquire and maintain certification as a Judge, Defendant requires judges to complete at least twenty-

9  five hours of service per month. *Id.* Judges are required to submit documentation to Wizards of their

10 participation in tournaments and Wizards maintains a database with those records. *Id.* Judges also

11 have required uniforms that they must wear when judging tournaments. *Id.*, Ex. 6 ("The judge uniform

12 and logo make an impression which connects the behavior of the judge using them to the Judge

13 Program.").

14 Judges who act as Team Leads have additional duties relating to the management of a team of

15 three to six judges at Wizards' larger events. *Id.*, ¶ 15, Ex. 7. These duties, as set forth by Wizards,

16 include preparing for rule interactions and policy discussions, conducting team meetings at the start,

17 end, and throughout the day of the tournament, assigning tasks to team members, and ensuring that

18 team members receive proper lunch breaks while maintaining floor coverage. *Id.*

19 Wizards retains the unilateral right to suspend, demote or decertify its Judges. *Id.*, ¶ 13, Ex. 6.

20 Decertification means Wizards has the sole authority to terminate a Judge from the Judge Program. *Id.*

21 Pursuant to its published Magic Judge Code, Wizards requires strict compliance with its code of

22 conduct for judges. *Id.*, ¶13, Ex. 6. Wizards expressly demands that Judges "uphold the highest

23 standards of integrity and professionalism at all times -- especially while they are judging, but also

24 when they aren't, even as players or spectators." *Id.*, Ex. 5. In the event of Judge misconduct, Wizards

25 applies a detailed and uniform process for reporting, investigating, and adjudicating such cases, which

26 can include discipline and exclusion from the Judge Program. *Id.*, Ex. 6.

27 Wizards also maintains a corporate or corporate sponsored structure for overseeing the work

28 performed by Judges. This includes the appointment of Regional Coordinators, who are responsible

for acting as the point person for a specific region's Judges, as well as the Regional Coordinator Advisory Committee, which is "an independent group for judges to provide feedback about Magic and the Judge Program" to "Wizards and the Level 4 and 5 judges." *See* FAC, Ex. 2.

## C. **Wizards Provides Judges With Non-Cash Compensation for Their Judging of Tournaments**

Wizards takes advantage of its Judges by not paying them minimum or overtime wages, while benefitting from their work. *Id.*, ¶¶ 16-17. Although Wizards did not remunerate its Judges in cash, it provides some Judges in-kind compensation in the form of product, such as playing cards, special discounts, and sponsorship to events in other cities and countries, for their time worked. *Id.*, ¶16, Ex. 5.

## III. **PROCEDURAL HISTORY**

On October 29, 2015, Plaintiff filed his original complaint in the Santa Clara County Superior Court asserting the following causes of action: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to reimburse business expenses; (6) late payment of wages; (7) failure to furnish timely and accurate wage statements; (8) failure to maintain accurate payroll records; (9) unlawful and/or unfair business practices; (10) violation of the Private Attorney General Act; and (11) violation of the Fair Labor Standards Act. ECF No. 1, Ex. 1.

On January 7, 2016, Wizards filed a Motion to Dismiss Plaintiff's original complaint. ECF No. 7. On January 19, 2016, Plaintiff filed his FAC, alleging further facts and attaching supporting exhibits to the FAC. ECF No. 14.[3] On February 2, 2016, Defendant filed the present Motion. ECF No. 18-1.

---

[3] The Court should not consider Defendant's contentions in footnote 1 of their Motion to Dismiss the FAC ("Motion") concerning Defendant's characterizations of changes made from the original complaint to the FAC as that is not properly before the Court. A first amended complaint supersedes the original complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, the Court must treat an original complaint as nonexistent. *Id.* The filing of the FAC mooted Defendant's first Motion to Dismiss. Thus, Defendant's assumption concerning Plaintiff's purported concession is immaterial. Nor, as Defendant suggests (Motion at 15), should the Court draw any negative inferences from Plaintiff's choice to amend the complaint in lieu of opposing Defendant's initial Motion to Dismiss. Plaintiff chose to amend as of right and should not be penalized for his

4

# IV. ARGUMENT

## A. Legal Standard

At the outset, it should be recognized that the factual disputes which exist between Plaintiff and Defendant cannot be resolved on a motion pursuant to Fed. R. Civ. P. 12(b)(6). Thus, the question of whether Plaintiffs are, or are not, employees of Defendant cannot be resolved on a motion to dismiss. "Under California law, if reasonable people could differ on whether [an employment relationship exists] based on the evidence in the case, the question is not for the court to decide; it must go to the jury." *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1076 (N.D. Cal. 2015).

Motions to dismiss for failure to state a claim are disfavored and are rarely granted because a determination on the merits is preferred. Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is proper only in an "extraordinary case." *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). If the face of the complaint pleads a claim for which some relief can be granted, a Rule 12(b)(6) motion should be denied. *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1462-63 (C.D. Cal. 1996).

In considering Wizards' Motion to Dismiss, the Court must accept Plaintiff's allegations as true and construe them in the light most favorable to Plaintiff. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly*, 550 U.S. at 555. Rather, factual allegations simply must "be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* So long as the plaintiff alleges facts to support a theory that is not facially implausible, then the "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a 'recovery is very remote and unlikely.'" *Id.* at 556. Contrary to Defendant's contention that the FAC

(continued . . .)

effort to buttress the allegations of his initial complaint. In so doing, Plaintiff exercised a good faith effort to obviate the need for the present Motion.

612771.11

contains legal conclusions that the Court need not accept as true, the FAC and the exhibits attached thereto contains ample factually detailed allegations.

Accepting the well-pleaded facts in Plaintiff's FAC as true, Plaintiff has pleaded viable claims under California law and the FLSA. Plaintiff's claims meet all technical pleading requirements and are alleged with particularity. Therefore, Plaintiff respectfully requests that the Court deny Wizards' Motion and order it to file an Answer.

**B.      The FAC Sufficiently Alleges Violations of the California Law.**

       **1.      Plaintiff Is Presumed An Employee for Performing Labor Benefiting Wizards.**

It is well established that California law presumes employment status where a person performs labor or renders service for another person. Lab. Code § 3357 ("Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee."); *see also* Lab. Code § 2750.5 (presuming employment status where worker performs work that requires a license).

Here, the FAC contains numerous allegations that Plaintiff and other Judges have performed labor for the benefit of Wizards; thus, entitling them to the presumption of employment status. Defendant does not dispute, because it cannot, that Plaintiff and other Judges perform labor or render services that directly benefit Wizards' business. This work, during tournaments, includes: (1) ensuring the fairness of games with adherence to Wizard's rules for gameplay; (2) answering rules questions from players; (3) correcting infractions; (4) applying penalties when necessary; and (4) as a team lead at larger tournaments, managing other judges, assigning tasks, and ensuring adequate coverage and meal breaks of team members. FAC, ¶¶ 8, 9, 15, and Exs. 5 and 7. Outside of tournaments, Judges have additional work duties, which include (1) completing the steps to obtain certification as a Judge; (2) maintaining certification; (3) keeping current with Wizards' announcements, directives, instructions, rulings, and discussions regarding the game; (4) administering tests for lower level judges; (5) interviewing, mentoring, training and evaluating lower level judges; and (6) submitting documentation to Wizards of their participation in tournaments. *Id.*, ¶¶ 10, 11, 16, and Exs. 5 and 6. Wizards also employs Judges to serve as representatives to retailers and players by providing them with customer service, instruction, and support, which is also documented by mandatory reports

regarding retailers' compliance with Wizards' policies. *Id.*, ¶ 16 and Ex. 6. In total, Wizards requires Judges to spend at least 25 hours per month performing these Judge related work duties. *Id.*, ¶ 11. Wizards admits, through its documents, that the job of a Judge requires "a lot of work." *Id.*, Ex. 5.

This work benefits Wizards' for-profit enterprise of selling products relating to Magic because these events and tournaments are marketing tools to actively engage players in Magic and to provide Wizards with a means to sell its products. *Id.*, ¶¶ 8-9. Judges are, thus, integral to the business of Wizards. In fact, Wizards concedes that these events, such as FNM tournaments, have been the "lifeblood" of the game since its inception. *Id.*, ¶ 14, Ex. 3. Its official website also contains a link called "Find a Judge" where store operators can go to find a judge to work at tournaments in their stores and Wizards maintains the organizational structure that oversees work of Judges to ensure that they act consistent with Wizards' promulgated Magic Judge Code. *Id.*, ¶¶ 14 and Exs. 2 and 3.

In light of this work performed for Wizards, Plaintiff and other Judges are presumed employees under California law.

## 2. <u>The FAC's Allegations Make Clear that Judges Are Not Volunteers Under California Law.</u>

Consistent with the presumption of employee status, the FAC allegations eliminate any possibility that Plaintiff is a volunteer for Wizards under California law. The Department of Labor and Standards Enforcement ("DLSE"), the agency charged with interpreting and enforcing the California Labor Code and Wage Orders, has consistently held that volunteers are limited only to those persons who intend to volunteer their services for public service, religious, or humanitarian objectives without contemplation of pay. DLSE Op. Letter at 1 (Oct. 27, 1988), available at http://www.dir.ca.gov/dlse/opinions/1988-10-27.pdf (last visited Feb. 16, 2016).[4] Critically, the DLSE concluded that the provision of personal services to commercial businesses, as opposed to nonprofit entities, does not qualify as volunteer activity and instead, constitutes work by an employee that must be paid consistent with the IWC Wage Orders. *Id.* The FLSA also has adopted a similar

---

[4] Although not binding, DLSE opinion letters are persuasive authority for California courts. *See Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 584 (2000) (finding persuasive the DLSE's interpretation of (('hours worked')) promulgated in two DLSE opinion letters).

distinction between volunteers and employees. *See supra* Section IV.C.2. The FAC has alleged sufficient facts to demonstrate that Plaintiff and other Judges are employees, not volunteers, because the work they provided assists Wizards' commercial enterprise and they expect payment, albeit as in-kind form.

### 3. The FAC Sufficiently Alleges that Wizards Is Plaintiff's Employer.

In the seminal case, *Martinez v. Combs*, 49 Cal. 4th 35, 52 (2010),[5] the California Supreme Court held that the Legislature intended the IWC's wage orders to define the employment relationship in actions under Labor Code Section 1194. In parsing the language of the relevant wage order, the *Martinez* Court explained that "to employ" has "three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." *Martinez*, 49 Cal. 4th at 64 (emphasis in original). While satisfaction of any one of these alternate tests evinces an employment relationship, Plaintiff's allegations can and have met all three.

#### a. The FAC Alleges That Wizards Exercised Control Over Plaintiffs' Wages, Hours or Working Conditions.

Pursuant to the first prong of the *Martinez* test, an employer is broadly defined as an entity, "who directly or indirectly, through an agent or any other person, employs or exercises control over the wages, hours or working conditions of any person." *Martinez*, 49 Cal. 4th at 63; *see also* IWC Wage Order No. 4-2001 § 2(H). Because this is a disjunctive test, Plaintiff need not prove control over all three enumerated factors to establish a plausible employment relationship so long as the employer's overall control is sufficiently proven. *See Betancourt v. Advantage Human Resourcing*, No. 14-cv-01788-JST, 2014 WL 4365074, at *4-5 (N.D. Cal. Sept. 3, 2014) (finding control over some working conditions and hours sufficient to allege control for employment purposes). The allegations of the FAC pled detailed facts that Wizards exercised sufficient control over Plaintiff's hours and working conditions to create an employment relationship.

---

[5] Although *Martinez* is procedurally and factually distinguishable from the present case, the test for an employment relationship articulated by the court is controlling here. It is noteworthy that in *Martinez*, the court was ruling on a motion for summary judgment, not a motion to dismiss. 49 Cal. 4th at 68.

8

612771.11

In *Betancourt*, Judge Tigar of this District denied a motion to dismiss after finding that the plaintiffs adequately pled employment status under all three *Martinez* tests. 2014 WL 4365074, at *1-3. In that case, the prospective workers of a temporary staffing agency sought compensation for time they spent interviewing with clients of the agency. In denying the motion to dismiss, the Court held that the plaintiff adequately alleged an employment relationship because he alleged facts manifesting Defendant's exercise of control over his working conditions related to unpaid interviews, which included arranging the interviews, preparing the workers for the interviews, and acting as the intermediary between the placement and the plaintiff. *Id.* at 4-5.

Similar to *Betancourt*, Wizards retains control over Plaintiff's working conditions through its established oversight structure, Judge Certification Program, and published Magic Judge Code. Wizards maintains an uniform system to oversee and manage the work performed by Judges. This system includes, among other things, the installation of Regional Coordinators, who act as a specific region's point of contact and coordinator of the Judge Program, and the Regional Coordinator Advisory Committee, which provides an outlet for feedback regarding Magic and the Judge Program.[6]

The Judge Program, operated by Wizards, certifies individuals to work as Judges, classifies them based on Levels from one to five, and establishes increasing work requirements for each level. In essence, Wizards controls the hiring of Judges by setting the criteria and procedure for Judge certification. Without this certification, Judges cannot work certain events and will not be listed on Wizards' official list of judges available for events. Wizards also controls whether and how Judges go through training and testing to advance to higher Judge levels and what responsibilities they have at each level.

In addition, all Judges are required to comply with the Wizards promulgated Magic Judge Code. This 9-page document sets forth in great detail the expectations of Judges and the consequences for non-compliance. Failure to abide by these directives can and does result in Wizards sanctioned

---

[6] As discussed above, the level of Wizards involvement in these structures and other corporation oversight will be the subject of further discovery. Any attacks by Wizards on the accuracy of these allegations underscores the premature nature of its motion and the need for Plaintiff to conduct discovery on this issue.

612771.11

discipline pursuant to enumerated procedures.  Critically, through the Magic Judge Code, Wizards retains the unilateral authority to terminate Judges from the Judge Program by decertification.  Once decertified as a Judge, an individual is barred from acting as a certified judge at events.  This is analogous to the authority to terminate employees in other non-conventional employment settings.  *See Cotter*, 60 F. Supp. 3d at 1069 (finding Lyft's unilateral ability to exclude drivers from its platform as analogous to the power to fire).

Other indicia of control include Wizards' detailed instructions regarding Judges' core job duties, such as keeping the game fair, answering rules questions from players at the tournament, correcting infractions, applying penalties when necessary, mandating the additional duties expected of team leads at larger tournaments, and the requirement that Judges wear Wizards' uniforms.  Furthermore, this level of control is consistent with Wizards' view that Judges and their behavior reflect directly upon its product and that they act as representatives of the company, Magic, and the Judge Program.[7]  Taken together, these factual allegations reflect sufficient control over working conditions to establish that Wizards employed Plaintiff.

Wizards also exercises control over the Judges' hours by requiring that that they work at least twenty –five hours per month to maintain their judge certification.  It also requires Judges to send in documentation regarding their participation in tournaments, to keep abreast of Wizards' announcements, instructions, and rulings, to contribute reports regarding retailer compliance with company policies, to renew their certification with regular testing, to train other Judges, and to evaluate other Judges.

The above pleaded facts are more than adequate to show that Wizards exercises control over the hours and working conditions of its Judges to state a claim for employment status under California law.[8]

---

[7] In fact, Wizards demands compliance with its directives even when Judges are not performing tasks in their official capacity.  FAC, Ex. 5.

[8] Wizards' failure to pay wages in contravention of the Labor Code is immaterial for this analysis since that failure is the gravamen of this action.  *See Betancourt*, 2014 WL 4365074, at *5 (disregarding that the agency did not "set any wages" because it did not consider any wages due and owing).

612771.11

In the face of this evidence, Wizards attempts to distract the Court by focusing on immaterial facts and inapposite cases. For example, Wizards makes much of the fact that Plaintiff did not submit a formal job application to it, but cannot dispute that certification functionally serves as a barrier, under Wizards' control, to work as a Judge. Moreover, its argument that Judges are not "interviewing" with an agent or representative of Wizards (Motion at 10) is without merit because it is reasonable to infer, as the FAC does, that a Level 2 or higher Judge acts on Wizards' behalf when administering the certification exam, conducting the interview, and making a recommendation of the judicial candidate to Wizards. This conclusion is bolstered by the fact that Wizards admits that the public behavior of Judges, particularly in their capacity as a Judge, reflects on Wizards, Magic, and the Judge Program.

Wizards also takes issue with the fact that Wizards does not mandate that its Judges attend particular tournaments; however, the employment relationship here is non-traditional and is akin to more modern employment situations where employees are free to choose the amount and timing of work. *See e.g. Cotter*, 60 F. Supp. 3d at 1078 ("[a]lthough Lyft drivers enjoy great flexibility in when and how often they work … Lyft retains a great deal of control …").

Wizards attempts to distance itself from involvement in FNM by arguing that it is actually the stores, and not Wizards, who employ and reward the players are equally unavailing. The FAC includes allegations that Wizards has direct involvement with FNM by encouraging these events as a way to market and sell its products, providing resources for these events, such as the How to Find a Judge, providing prizes for stores to give to the FNM winners, maintaining a webpage for stores regarding how to run FNM events, and devoting significant resources to its Judges through the Judge Certification Program, the Regional Coordinator Advisory Committee, and management of the Judge webpages and databases.

Wizards' protestations that it does not formally fire Judges is similarly not well taken in light of its unilateral right to decertify Judges. Pursuant to the Magic Judge Code, Wizards retains the right to suspend, demote, or decertify its Judges for failure to adhere to Wizards' extensive rules.[9] The FAC

---

[9] Defendant objects to Exhibit 6 stating that the Magic Judge Code is posted on a third-party Wiki page. Defendant's Motion at 10. However, the relevance of Exhibit 6 is more appropriately explored through discovery and not on a motion to dismiss where the well-pleaded factual allegations of the FAC must be accepted as true.

alleges that Wizards has the authority to take disciplinary or other punitive measures against its Judges for judicial misconduct. Further, whether Plaintiff can choose to cease acting as a Judge at any time he chooses (Motion at 12) is not determinative, as that is not different from any at-will employment relationship.

The cases cited by Wizards are also inapposite because they are distinguishable on their facts. Wizards' reliance upon *Jeung v. Yelp, Inc.*, 15-cv-02228-RS, 2015 WL 4776424, at *2 (N.D. Cal. Aug. 13, 2015) is misplaced because, unlike the complaint in *Jeung*, the FAC here is factually detailed. The *Jeung* court took issue with the plaintiffs' use of conclusory allegations by using the term "hire" to refer to the process by which members of the public sign up for an account on the Yelp website and submit reviews, and in using the term "fire" as referring to Yelp's involuntary closure of their accounts. *Id.* Here, Plaintiff has properly alleged foundational facts, not legal conclusions. For example, Judges must pass a rigorous certification exam, participate in an interview and obtain a letter of recommendation prior to serving as a Judge and Wizards has the authority to suspend, demote or decertify them.[10]

Likewise, its reliance upon *Ochoa v. McDonalds Corp.*, No. 14-cv-02098-JD, 2015 WL 5654853, at *1 (N.D. Cal. Sept. 25, 2015) and *Olmstead v. Home Depot U.S.A., Inc.*, No. B248296, 2015 WL 1791440, at *5 (Cal. Ct. App. Apr. 17, 2015) (depublished) are misplaced.[11] First, unlike the present case, both cases were decided at the summary judgment stage after discovery was conducted as opposed to the motion to dismiss stage where the allegations must be assumed true. *Ochoa*, 2015 WL 5654853, at *1; *Olmstead*, 2015 WL 1791440, at *3. Second, unlike here, the issue before both courts concerned the level of control afforded franchisors where a governing contract gave the franchisee ultimate control over its employees regarding work hours and conditions, pay, and whether to hire or fire them. *Ochoa*, 2015 WL 5654853, at *1-2; *Olmstead*, 2015 WL 1791440, at *6. Because the franchisor could only influence the franchisee employees indirectly through its economic and business

---

[10] Notably, the Court analyzed employment status under the FLSA, not California law, and nevertheless granted leave to amend after granting the motion to dismiss. 2015 WL 4776424, at *3.

[11] While Defendant correctly states federal courts may consider depublished California state court decisions, Defendant fails to mention that depublished opinions have no precedential value. *Nunez v. City of San Diego*, 114 F.3d 935, 942 n.4 (9th Cir. 1997).

relationship with the franchisee, the courts determined that the franchisors did not sufficiently control the franchisees' employees. In contrast, here Wizards does not have a governing agreement with its local stores regarding exclusive control over Judges and, in fact, Wizards has the ability to directly impact the employment status of Judges through, among other things, its certification program, unilateral ability to decertify Judges, and its directions regarding how these events should be conducted. The individual stores holding FNM events do not have the authority or ability to control these aspects of a Judge's work or status.

### b. The FAC Alleges That Wizards Suffered or Permitted the Judges to Work.

Under the second prong of the *Martinez* test, an employment relationship is created if Wizards suffered or permitted the Judges to work. *Martinez*, 49 Cal. 4th at 69. The test focuses on whether the employer knew or should have known that an individual was performing work on its behalf, yet failed to prevent the individual from working. *Id.* ("A proprietor who knows that persons are working in his or her business without having been formally hired or while being paid less than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having the power to do so."). Courts have interpreted whether an employer "suffered or permitted" an employee to work to mean that the employer had knowledge, real or constructive, of the work being done. *Betancourt*, 2014 WL 4365074, at *5 (holding that Defendant suffered or permitted plaintiff to work as it arranged the workers' interviews).

Here, the FAC's allegations detail not only that Plaintiff and Judges performed work that benefited Wizards' business, but also that Wizards knew about and relied upon this work to encourage the sales of its game. FAC ¶¶ 9-11, 14-15. Despite this knowledge, Wizards failed to prevent the Judges from working. Indeed, based on the allegations of the FAC, Wizards' entire business model relies on the free labor of Judges to ensure that its tournaments run fairly and to keep players actively engaged in Magic. *Id.*, ¶¶ 9, 14.

The FAC is replete with Wizards' own references to judging as "work." *See e.g.*, Ex. 5 at 2 ("expert level judges ... 'work' on higher level tournaments"), ("TO ...is in charge of the tournaments the judge works"), Ex. 5 at 3 ("judging job"), Ex. 5 at 5 (become a judge ... an interesting activity that's ... a lot of work"); Ex. 7 at 2 ("Team leading is a high pressure job"), Ex. 7 at 3 ("While the

13

event might be done for the day, your job as team leader is not done yet!"). Despite these concessions, Wizards indisputably refused to pay Judges minimum and overtime wages for this work performed.

Wizards' citation to *Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419 (2010) does not disturb this conclusion. In *Futrell*, the court, applying the three-pronged definition from *Martinez*, held that a payroll processing company that provided payroll services to a producer of television commercials was not a joint employer and did not suffer or permit plaintiff to work since defendant did not have the power to cause plaintiff to work or prevent him from working. *Id.* at 1434. As addressed above in section IV.B.3.(a), Wizards has both the power to allow individuals to work as certified Judges and to prevent them from acting as Judges by suspending or decertifying them. Because, Wizards suffered or permitted the Judges to work Defendant's Motion should be denied.

### c. The FAC Properly Alleges that Wizards "Engaged" Plaintiff to Work, Creating a Common Law Employment Relationship.

The third prong of the *Martinez* test embodies the common law employment test; to employ means to "engage" and it is to be understood by its plain meaning. 49 Cal. 4th at 64. "[T]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *S.G. Borello & Sons, Inc. v. Dept. of Indus. Relations*, 48 Cal. 3d 341, 350 (1989). Importantly, "what matters under the common law test is not how much control a hirer *exercises*, but how much control the hirer retains the *right* to exercise. *Perguica v. Ind. Acc. Com.*, 29 Cal. 2d 857, 859-860 (1947) (emphasis in original). The right to terminate a worker at will is the strongest evidence of the right to control. *Malloy v. Fong*, 37 Cal. 2d 356 (1951). Courts also consider whether the work performed is part of the entity's regular business. *Betancourt*, 2014 WL 4365074, at *5 (allegation that work was the "lifeblood" of the employer's business supported common law employment relationship).

Here, the FAC alleges that Wizards "engaged" Plaintiff and thereby created a common law employment relationship. Plaintiff has discussed above in section IV.B.3.(a) numerous factual examples from the FAC evincing Wizards' right to control the manner in which its Judges oversee tournaments. Wizards' detailed documentation regarding the duties and expectations of Judges establishes the control it had the *right* to exercise. Further, the Magic Judge Code (Ex. 6 at 2) recites

1  that judges serve "at will," that a judge can withdraw from the Judge Program at any time, and the

2  Judge program can choose to suspend a judge, change a judge's certification level or even decertify a

3  judge … ."  In addition, Judges directly support "the life blood" of Wizard's for-profit business of

4  selling Magic cards and products.  Thus, the FAC adequately pleads a common law employment

5  relationship.

6      Since Plaintiff has properly alleged facts to support his claim under the Labor Code,

7  Defendant's Motion should be denied.

8  **C.  The FAC Plausibly Supports a Claim Under the FLSA.**

9      Contrary to Wizards' protestations, Plaintiff has alleged an employment relationship under the

10  FLSA, and that he and the Collective Action Members performed unpaid work, in violation of 29

11  U.S.C. § 206 (a).  *See e.g*., FAC ¶¶10-16, 93-102.  Their allegations, like under California laws,

12  include that Plaintiff and Collective Action Members served as Judges for Wizards, provided Wizards

13  that direct benefit, expected and received in-kind compensation from Wizards, and were subject to

14  Wizards' control.  *Id*., ¶¶ 10-16, Ex. 6.

15      The FLSA was crafted to ensure fair business practices and to protect the American worker

16  from exploitation.  The FLSA requires that "[e]very employer shall pay to each of his employees …

17  engaged in commerce … wages …"  29 U.S.C. § 206(a).  It defines an "employer" as "any person

18  acting directly or indirectly in the interest of an employer in relation to an employee …" 29 U.S.C.

19  § 203(d).  To further its remedial and humanitarian goals, the FLSA broadly defines "employee" as

20  "any individual employed by an employer."  29 U.S.C. § 203(e)(1). [12]

21      "Courts have adopted an expansive interpretation of the definitions of 'employer' and

22  'employee' under the FLSA, in order to effectuate the broad remedial purposes of the Act." *Real v*.

23

24  [12] There are limited enumerated exceptions to the FLSA's definition of "employee".  Those exceptions
25  apply only to certain individuals employed by a public agency, certain agricultural employees, and an
    individual who, where other conditions are met, "volunteers to perform services for a public agency."
26  29 U.S.C. 203(e)(2)-(e)(4).  The regulations specify that the public-agency exemption applies to
    individuals performing services "for civic, charitable, or humanitarian reasons, without promise,
27  expectation or receipt of compensation" and "without pressure or coercion, direct or implied, from an
    employer."  29 C.F.R. §§ 553.101(a), (c).  The plain statutory language makes clear that Congress
28  chose not to carve out an exception for a for-profit entity like Wizards.  Thus, since Wizards is not a
    "public agency" FAC, ¶ 8, the FLSA's narrowly circumscribed exceptions are not applicable to it.

612771.11

*Driscoll Strawberry Assoc., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979); *see also Hale v. State of Arizona*, 967 F.2d 1356, 1362-63 (9th Cir. 1992) (noting that the FLSA's definition of "employee" is so expansive that it encompasses parties "who may not traditionally be thought of as employees at all"); *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947) ("[I]n determining who are 'employees' under the [FLSA], common law employee categories or employer-employee classifications under other statutes are not of controlling significance. This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category"). The Supreme Court "has consistently construed the [FLSA] liberally to apply to the furthest reaches consistent with congressional direction." *Tony & Susan Alamo Found. v. Sec'y of Labor ("Alamo")*, 471 U.S. 290, 296 (1985).

Similarly broad is the definition of "employ," which means to "suffer or permit to work." 29 U.S.C. § 203(g); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). Under the FLSA, work not requested but suffered or permitted is generally seen as compensable work time. *See* 29 U.S.C. § 203(g); 29 C.F.R. § 785.11.

Critically, FLSA rights cannot be abridged by contract or otherwise waived. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981). Under the FLSA there is no exception that allows a multi-billion dollar commercial enterprise to accept free labor from hundreds of unpaid "employees" and use them to staff its commercial, revenue-generating operations. To the extent that Wizards' is able to rely on unpaid, "volunteer" Judges to further this important business function, it could gain an unfair competitive advantage in the market, not only as between itself and other employers in its industry, but also as between the unpaid Judges and applicants who are deprived of employment where they would demand compensation for their services. Controlling FLSA authority dictates that Plaintiffs should have been paid for their work which means Defendant's motion should be dismissed.

1.    ***Alamo*'s Economic Realities Standard Requires the Court to Deny Wizards' Motion to Dismiss.**

In the controlling case on this issue, *Alamo*, 471 U.S. at 299-302, 306, the Supreme Court held

16

612771.11

that volunteer associates at a not-for-profit religious foundation, but who staffed the commercial for-profit businesses from which the organization derived most of its income, were "employees" and entitled to minimum wages. Despite the associates' fervent and credible beliefs that they were volunteers, the Court did not find that fact dispositive because "[t]he test of employment under [FSLA] is one of 'economic reality[.]" *Id.* at 300-301 (citing *Goldberg v. Whitaker House Corp.*, 366 U.S. 28, 33 (1961)). The Court reasoned that employers may not accept free labor even from workers who insisted on working for free because, "[i]f an exception to the Act were carved out for employees willing to testify that they performed work 'voluntarily,' employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act." *Id.* at 302. The *Alamo* Court held that the associates were employees within the meaning of the FLSA because they worked in contemplation of compensation even though the compensation received was primarily in the form of in-kind benefits, rather than cash, since those benefits are merely another form of wages. *Id.* at 295, 301.

## 2. **The Department of Labor Follows the Mandate of *Alamo*.**

Consistent with *Alamo*, the U.S. Department of Labor ("DOL") has long held that "individuals may not volunteer services to private sector for profit employers" under the FLSA. Department of Labor Opinion Letter Fair Labor Standards Act ("DOL OL"), 1999 WL 1788145, at *2 (Aug. 19, 1999). Where an individual engages in activities that are integral to the employer's business, that individual is more likely an employee than a volunteer because the work performed benefits the profitability of the business. *See* DOL OL, 2002 WL 32406599, at *1 (Oct. 7, 2002). For example, the Department of Labor found that students who took over bagging activities of a grocery store in exchange for tips to donate to charity were employees within the meaning of the FLSA where such activities were an "integral part of the employer's provision of customer service" and otherwise replaced paid regular employees of the grocer. *Id*, at *3. The DOL went on to explain that a volunteer exemption for for-profit entities would give those private employers an unfair competitive advantage, thereby undermining the goals of the FLSA. *Id.* This restriction of volunteer status under the FLSA is confirmed by the DOL's current website describing its sub-regulations, which reiterates that "employees may not volunteer services to **for-profit** private sector employers." DOL elaws – Fair

Labor Standards Act Advisor, Volunteers, *available at*:

http://webapps.dol.gov/elaws/whd/flsa/docs/volunteers.asp (last visited Feb. 13, 2016).[13]

### 3. The FAC's Allegations Regarding the Economic Reality of Judges Confirms That They Are Employees Under the FLSA.

While courts often apply *Alamo*'s economic realities test by examining four factors relating to employer status, which can be appropriate when comparing independent contractor versus employee status, its application to the volunteer context requires a modification to account for the fact that there is no economic relation to measure. *See, e.g., Okoro v. Pyramid 4 Aegis*, No. 11-C-267, 2012 WL 1410025, at *6 (E.D. Wis. Apr. 23, 2012) (six-factor test generally utilized in deciding whether worker is employee or independent contractor was of limited assistance in answering whether [plaintiff] was an employee or a volunteer); *see also, Purdham v. Fairfax Cty. Sch. Bd.*, 637 F.3d 421, 433-34 (4th Cir. 2011) (reviewing case law to find that "economic realities test 'is not as useful when attempting to distinguish volunteers from employees, where there is no economic relation to measure'"). Accordingly, courts have explained that the factors are not etched in stone and have cautioned that they should not be applied blindly. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Circ. 1983). Rather, the totality of the circumstances must be considered in determining whether an employment relationship exists. *Id.* (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

In *Liebesman v. Competitor Group, Inc.*, the court denied a motion to dismiss where the plaintiff had sufficiently alleged "that she was 'suffered to work' for [defendant] and did not obtain compensation for her efforts." 2015 WL 2195093, at *6. There, the court held that a fuller factual record would need to be developed to assess whether the workers who assisted in defendant's

---

[13] Courts have recognized DOL interpretations of its own regulations as persuasive sources of authority. *See e.g., Miller v. Farmers Ins. Exch.*, 481 F.3d 1119 (9th Cir. 2007) (deferring to DOL opinion letters where interpretation had been "consistent" over the years); *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295 (D.N.J. 2005) aff'd sub nom. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012) (relying on DOL fact sheet for conclusion that undocumented workers may pursue FLSA claims).

612771.11

marathon races were employees or volunteers. *Id*. However, the plaintiff's allegations that defendant set work rules, assignments and conditions of employment for the volunteer, provided training and instruction, and that the work was integral to the business of the defendant were sufficient to state a claim for employment status under the FLSA. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss at 12-13, *Liebesman v. Competitor Group, Inc.*, 2015 WL 2195093 (E.D.Mo. 2015); *see also Okoro*, 2012 WL 1410025, at *12 (granting plaintiff's motion for summary judgment by holding work performed for for-profit business constituted work and not volunteerism under FLSA because plaintiff expected compensation, work benefited defendant's business, she worked for a substantial period of time, and the duties did not serve a training purpose).

Here, like in *Liebesman*, the FAC has sufficiently alleged an employment relationship exists between Wizards and its Judges because Wizards suffered and permitted him to work without compensation. Notably, Wizards established work duties and expectations, set conditions of employment, provided training for the position, and relied upon Judges to maintain the "lifeblood" of its business. Furthermore, both Judges and Wizards expected compensation for their work – albeit as in kind benefits, which included playing cards or other product, such as special discounts, event shirts, sponsorship to events in other cities and countries, and limited distribution foil cards. FAC ¶¶ 12, 16, Ex. 5 at 4. This result is also consistent with the analysis of *Alamo* and the DOL's position on volunteerism because Judges perform work on behalf of a for-profit business that should not be shielded from unwaivable wage protections of the FLSA.

Even if the Court were to apply the four-prong economic realities test (more appropriate for independent contractor analyses), the FAC alleges sufficient facts to satisfy all four prongs. These factors include whether the employer (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Bonnette*, 704 F.2d at 1470, disapproved on other grounds in *Garcia v. San Antonio Metro Transit Auth.*, 469 U.S. 528 (1985).

### a. The FAC Alleges that Wizards Has the Right to Hire and Fire.

As set forth in above in Section IV.B.3.a.(i), the FAC contains allegations that Wizards has the authority to functionally hire and fire Judges through its certification program and right to decertify

612771.11

Judges under the Magic Judge Code. This satisfies the first prong of the economic realities test.

**b.** **The FAC Alleges that Wizards Exercised Supervision and Control Over Judges.**

As set forth above in Section IV.B.3.a.(i), the FAC contains numerous allegations of both of Wizards' right to control the work performed by Judges and its decision to exercise that right. Thus, the second prong of this test is met.

**c.** **The FAC Alleges That Wizards Determined Methods of Compensation for Judges.**

In consonance with the discussion of *Bonnette* above, although some courts may consider rates and methods of compensation as a factor, it is not a prerequisite to FLSA coverage. Importantly, since the facts of this case do not fit squarely within *Bonnette*'s regulatory factors, and indeed some of the factors are nonsensical to the Court's decision-making, the Court should not mechanically adhere to them. Since the crux of this case is the lack of any cash payment to Judges by Wizards, the third *Bonnette* factor concerning rate of pay has little application here. *See Betancourt*, 2014 WL 4365074, at *5.

Nonetheless, the FAC contains allegations that show that Wizards determined the type of compensation Judge would receive. Although the FAC alleges that Wizards generally did not compensate Judges in cash, similar to the volunteer associates in *Alamo*, Judges expect and in fact receive in-kind benefits. [14] This in-kind compensation includes playing cards or other product, such as special discounts, event shirts and sponsorship to events in other cities and countries. FAC, ¶¶12, 16, Ex. 5. Additionally, Judges may receive limited distribution foil cards in exchange for serving as Judges. *Id.*, Ex. 5 at 4.

Defendant's citation to *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996) does not change this conclusion since it is factually distinguishable. The plaintiff in *Williams* spent six months at a Salvation Army rehabilitation center where he was provided room, board, therapy and counseling. *Id.* at 1065. On admission to the program, he signed a document acknowledging that he was not an

---

[14] There is reason to believe that judges may have been paid money for their services in certain circumstances. *See* FAC, Ex. 5 at 4.

612771.11

employee, and that he would have to perform volunteer duties. *Id.* The court held that plaintiff was not an employee because he did not have an express or implied agreement for compensation and he was at the Salvation Army solely to receive rehabilitation. *Id.* at 1067. Here, in contrast, the Judges have expectation of and, in fact, receive in-kind compensation, their work contributes to the business of a for-profit enterprise, and Wizards is not providing some larger rehabilitative therapy in exchange for the work performed.

### d. The FAC Alleges That Wizards Required Its Judges To Document Participation In Their Tournaments.

The last factor of the *Bonnette* test looks to whether the employer maintained employment records. 704 F.2d at 1470. Again, it stands to reason that here there are no employment records in the traditional sense since the major premise of this case is that *Wizards* refused to consider Judges as employees. Nevertheless, the FAC recites that Judges are required to document their participation in tournaments and other work related activities. FAC, ¶11. Judges are expected to write reports about their judging experiences, which published them on the Wizards' website, this discrimination includes written as well as evaluations of other Judges akin to employee revenues. *Id.*, Ex. 5 at 3.

To the extent that Defendant argues that *Jeung* should be determinative of the outcome here, the specificity of Plaintiffs' allegations cast serious doubt on that contention. ¶ 11. As discussed above, the allegations in the FAC are a far cry from the generalized, conclusory allegations rejected in *Jeung*. Because Plaintiff's claim under the FLSA is more than sufficiently couched in factual assertions, Defendants motion should be denied.

## D. At a Minimum, the Court Should Grant Plaintiff Leave to Amend the FAC.

In the event that the Court were to credit any Wizards' arguments for dismissal, Plaintiff respectfully requests leave to amend. In the Ninth Circuit, leave to amend is freely given unless the complaint could not possibly be cured by the addition of other facts. *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) ("In exercising its discretion with regard to the amendment of pleadings, 'a court must be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits rather than on the pleadings or technicalities.'"). While Plaintiff maintains that his factual allegations are sufficient to state a claim under California law and the FLSA, he could provide additional factual

allegations if the Court deems it necessary.

## V.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety or in the alternative, grant Plaintiff leave to amend.

Dated: February 16, 2016

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

   /s/ James Kan
David Borgen (SBN 099354)
*Of Counsel*
dborgen@gbdhlegal.com
James Kan (SBN 240749)
jkan@gbdhlegal.com
Katharine Fisher (SBN 305413)
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Tel:   (510) 763-9800
Fax:   (510) 835-1417

Michael Malk (SBN 222366)
mm@malklawfirm.com
MICHAEL MALK, ESQ. APC
1180 S. Beverly Drive, Suite 302
Los Angeles, California 90035
Tel:   (310) 203-0016
Fax:   (310) 499-5210

Attorneys for Plaintiff and the Putative Class

22

612771.11