1  KARL R. LINDEGREN, SBN 125914
2  SHAUN J. VOIGT, SBN 265721
   FISHER & PHILLIPS LLP
3  2050 Main Street, Suite 1000
   Irvine, California 92614
4  Telephone (949) 851-2424
   Facsimile (949) 851-0152
5

6
   Attorneys for Defendant,
7  WIZARDS OF THE COAST LLC

8

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12

13  PAUL YALE, individually and on          Case No. 15-CV-06337-EJD
    behalf of others similarly situated,
14                                           *[Removed from Santa Clara Superior
                                             Court Case No.: 1-15-CV-287452]*
15              Plaintiffs,
                                             **REPLY MEMORANDUM OF**
16      vs.                                  **POINTS & AUTHORITIES IN**
                                             **SUPPORT OF DEFENDANT**
17  WIZARDS OF THE COAST LLC and             **WIZARDS OF THE COAST LLC'S**
18  DOES 1 through 100, inclusive,           **MOTION TO DISMISS PLAINTIFF**
                                             **PAUL YALE'S FIRST AMENDED**
19              Defendant.                   **COMPLAINT PURSUANT TO**
                                             **FRCP RULE 12(b)(6)**
20

21

22
                                             **DATE:     June 9, 2016**
23                                           **TIME:     9:00 a.m.**
                                             **CTRM:     4, 5th Floor**
24

25                                           Complaint Filed:  October 29, 2015
                                             Trial Date:       None
26

27

28

─────────────────────────────────────────────────────────
      REPLY MEMORANDUM IN SUPPORT OF WIZARDS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT....................1

II.     PLAINTIFF'S OPPOSITION RELIES HEAVILY ON CONCLUSORY AND IRRELEVANT ALLEGATIONS.......................................3

III.    THE FAC DOES NOT RAISE A PLAUSIBLE INFERENCE OF AN EMPLOYMENT RELATIONSHIP UNDER THE LABOR CODE.........7

 A. There Is No Presumption of Employment Status In This Case..................................................................7

 B. Plaintiff Has Not Adequately Pled That Wizards Exercised Control Over His Wages, Hours, or Working Conditions.......................8

 C. Plaintiff Has Not Plausibly Alleged that Wizards Suffered or Permitted Him to Work..................................................11

 D. Plaintiff Cannot Plausibly Allege That He Was "Engaged" By Wizards As A Common Law Employee..............................11

IV.     PLAINTIFF ALSO FAILS TO PLEAD FACTS TO SUPPORT AN EMPLOYMENT RELATIONSHIP UNDER THE FLSA..................12

V.      LEAVE TO AMEND SHOULD BE DENIED..............................15

VI.     CONCLUSION...........................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alamo Found. v. Sec'y of Labor,*
   471 U.S. 290 (1985) (*Alamo*) ........................................................................ 13, 14

*Alvarez v. IBP, Inc.,*
   339 F.3d 894 (9th Cir. 2003) ................................................................................ 4

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................................... 4, 5

*Bain v. Tax Reducers, Inc.,*
   219 Cal. App. 4th 110 (2013) ................................................................................ 8

*Betancourt v. Advantage Human Resourcing, Inc.,*
   2014 WL 4365074 (N.D. Cal. Sept. 3, 2014) .............................................. 9, 10, 11

*Bonnette v. Cal. Health & Welfare Agency,*
   704 F.2d 1465 (9th Cir. 1983) ..................................................................... 3, 15, 16

*Ceja-Corona v. CVS Pharm. Ins.,*
   2013 WL 3282974 (E.D. Cal. July 2, 2013) .......................................................... 14

*Charles v. Burton,*
   169 F.3d 1322 (11th Cir. 1999) ........................................................................... 15

*Cotter v. Lyft, Inc.,*
   60 F. Supp. 3d 1067, 1076 (N.D. Cal. 2015) ........................................................ 15

*Daniels–Hall v. National Educ. Ass'n,*
   629 F.3d 992 (9th Cir. 2010) ................................................................................. 7

*Futrell v. Payday Cal., Inc.*
   190 Cal.App.4th 1419 (2010) .............................................................................. 12

*Jeung v. Yelp, Inc.,*
   2015 WL 4776424 (N.D. Cal. Aug. 13, 2015), at *2............................. 4, 5, 11, 16

*Liebesman v. Competitor Group Inc.,*
   2015 WL 2195093 (E.D. Mo. May 11, 2015) ........................................................ 14

*Martinez v. Combs,*
   49 Cal.4th 35 (2010) ............................................................................... 3, 9, 11, 12

*Real v. Driscoll Strawberry Assocs., Inc.,*
   603 F.2d 748 (9th Cir. 1979) ............................................................................... 15

*Sec'y of Labor v. Lauritzen,*
  835 F.2d 1529 (7th Cir. 1987) ............................................................... 15

*Tennessee Coal, Iron, & R.R. Co. v. Muscoda Local No. 123,*
  321 U.S. 590 (1994) ............................................................... 4, 13, 14

*Yellow Cab Cooperative, Inc. v. Workers' Comp. Appeals. Bd.,*
  226 Cal.App.3d 1288 (1991) ............................................................... 8

**Statutes**

29 U.S.C. § 216(b) ............................................................... 13

*Labor Code* section 2750.5 ............................................................... 8

*Labor Code* section 3357 ............................................................... 8, 9

## REPLY MEMORANDUM OF POINTS & AUTHORITIES

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff insists in his Opposition that he has adequately alleged an employer-employee relationship between himself (and other Magic "Judges") and Wizards, which he concedes is a prerequisite to each and every claim set forth in the First Amended Complaint ("FAC"). Contrary to Plaintiff's assertion, however, neither the *facts* actually alleged in the FAC nor the exhibits attached thereto sufficiently state claims under either California or Federal law, even when viewed in the light most favorable to Plaintiff.  Indeed, Plaintiff has not, and cannot, allege facts that support his conclusory and unfounded assertions that Wizards had or has the authority to hire, fire, supervise, or otherwise control Plaintiff and the multitude of individuals that he seeks to represent.

With respect to Plaintiff's California *Labor Code* claims (and his derivative claim for unfair competition under California's *Business & Professions Code*), Plaintiff continues to cite to and rely upon his same conclusory allegations that Wizards highlighted in its moving papers, which the Court must disregard in ruling on Wizards' Motion to Dismiss ("Motion"). Plaintiff also relies heavily on allegations that purportedly relate to *other unnamed Judges*, which cannot plausibly support *his own* claims against Wizards. For example, Plaintiff baldly claims that individuals seeking to become judges must interview with a Level 2 or higher Judge (i.e., a third-party) and pass a test to become certified, but he fails to allege anywhere in the FAC that *he* went through a certification or interview process when he elected to become a judge more than 18 years ago.  Plaintiff also discusses tournaments and larger events outside of the store level—events where he contends Wizards exerts the greatest control over Judges—but he does not claim that he has ever been a Judge at such events.  Similarly, Plaintiff alleges that certain Judges wear a uniform and receive non-monetary compensation, but

REPLY MEMORANDUM IN SUPPORT OF WIZARDS' MOTION TO DISMISS

notably absent is a claim that he wore a uniform or received any remuneration from Wizards—monetary or otherwise. These are just a few of the generalized allegations *as to other Judges* that lack a corresponding allegation that such items apply in any way to Plaintiff. As such, even if these and other allegations in the First Amended Complaint were pertinent to *other Judges'* potential claims (and they are not), such assertions are irrelevant to *Plaintiff's* claims.

In addition, Plaintiff relies heavily on exhibits that pre-date the applicable statute of limitations, are contained in and originate from third-party websites, and contradict his own allegations. As explained in Wizards' moving papers, these exhibits are entirely irrelevant to Plaintiff's claims and this Motion. Looking past the conclusory and irrelevant allegations to the limited *facts* that Plaintiff alleges *on behalf of himself*, it is abundantly clear that Wizards did not "employ" Plaintiff within the meaning of the California *Labor Code* under any of the three tests articulated by the California Supreme Court in *Martinez v. Combs*, 49 Cal.4th 35, 50 (2010). Plaintiff's desire (18+ years later) to transform his hobby into an employment relationship to seek a windfall from Wizards does not alter this analysis. Simply put, Plaintiff has not and cannot plausibly state a claim against Wizards under the California *Labor Code* or *Business & Professions Code*.

Likewise, Plaintiff has failed to state an FLSA claim against Wizards pursuant to *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). This is not surprising, of course, because Plaintiff has never been employed by Wizards within the meaning of the FLSA. Plaintiff's discussion of the economic reality test is also unavailing, as his 18+ year tenure as a Judge without any remuneration whatsoever confirms that as a matter of "reality," he is not, and has never been, economically dependent on Wizards. Indeed, Plaintiff has failed to allege that he performed compensable "work" within the meaning of the FLSA. As the Supreme Court explained more than 70 years ago, an activity is "work" *only* if it is "controlled or required by the employer and pursued

REPLY MEMORANDUM IN SUPPORT OF WIZARDS' MOTION TO DISMISS

necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron, & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598 (1994) ("*Tennessee Coal*"); *see also Alvarez v. IBP, Inc.,* 339 F.3d 894, 902 (9th Cir. 2003) ("that such activity is work as a threshold matter does not mean without more that the activity is necessarily compensable").

In this case, Plaintiff has failed to allege facts supporting his bald conclusions that he performed "work" or that Wizards "employed" him, let alone that his activity as a Judge for 18+ years—without any promise or receipt of compensation from Wizards—was controlled or required by Wizards *and* pursued necessarily and primarily for Wizards' benefit, rather than as his personal hobby. Thus, aside from failing the economic reality test, the facts alleged in the FAC are insufficient to meet even the definition of "work" necessary for an FLSA claim. Without satisfying these elements, there is no employer-employee relationship between Wizards and Plaintiff, and by extension, no plausible FLSA claim.

As Wizards' moving papers make clear, its Motion presents a pure legal question of whether Plaintiff has met his obligation to plead sufficient facts to state a plausible claim for relief under the *Labor Code* or the Fair Labor Standards Act. Under *Twombly* and *Iqbal*, a court must "draw on its judicial experience and common sense" to evaluate whether a complaint states a plausible claim for relief. *Jeung v. Yelp, Inc.*, 2015 WL 4776424, at *2 (N.D. Cal. Aug. 13, 2015), at *2. A review of the applicable law and the FAC reveals that Plaintiff has failed to state a claim for relief as to any of his claims. Simply put, Plaintiff's hobby of judging local *Magic* events does not and cannot create an employment relationship with the manufacturer of the *Magic* cards: Wizards. Accordingly, the Court should dismiss the FAC, and should do so without leave to amend.

## II. PLAINTIFF'S OPPOSITION RELIES HEAVILY ON CONCLUSORY AND IRRELEVANT ALLEGATIONS

In its moving papers, Wizards detailed the myriad conclusory allegations

REPLY MEMORANDUM IN SUPPORT OF WIZARDS' MOTION TO DISMISS

FPDOCS 31467189.1

contained in Plaintiff's FAC. [*See, e.g.,* Motion, at p. 5:23-7:3.] Nevertheless, Plaintiff's Opposition continues to rely on these same conclusory allegations, insisting that Plaintiff has alleged sufficient facts in support of his claims. Notably absent from his brief is any reference to actual, specific, factual allegations that support his conclusions. Plaintiff's characterization of these conclusions as facts does not make them so no matter how many times he repeats them. His bald, unsupported allegations must be disregarded in ruling on the instant Motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Jeung*, 2015 WL 4776424, at *2.

Additionally, and in a transparent attempt to detract from his failure to plausibly state a claim against Wizards, Plaintiff relies on allegations and exhibits that have absolutely no relevance to any of his claims. For example, Plaintiff argues that Wizards uses Judges "as representatives to retailers and players, providing them with customer service, instruction, and support," and that "Judges are mandated to submit reports to Wizards regarding retailers' compliance with its policies." [Opp., at p. 2:7-9 citing FAC, ¶ 16.] Plaintiff does not, however, allege that *he* engaged in any such activity (and these activities would not support an employment relationship in any event). Plaintiff also alleges that becoming a Judge requires a successful in-person interview with a third-party and a written exam to demonstrate competency with the *Magic* rules and card interactions, as well as obtaining a letter of recommendation from an existing third-party Judge. [Opp., at p. 2:16-18 citing FAC, ¶ 11, Ex. 2.] Yet again, however, the FAC contains no allegations that *Plaintiff* went through this alleged process when he independently chose to become a Judge two decades ago--or at any time since.

In addition, Plaintiff alleges that "[o]ther components of the Judges' work include administering tests, interviewing, mentoring, training and evaluating lower level judges, and preparing reports for submission to Wizards relating to their judging experiences." [Opp., at p. 2:20-23 citing FAC, ¶¶ 10-11, Ex. 5.] Putting aside the fact that Plaintiff's allegation that third-party Judges mentor,

train, and evaluate other Judges (among other things) in no way indicates an employer-employee relationship between those Judges and Wizards, glaringly absent from the FAC are allegations that *Plaintiff* himself (as opposed to the other unnamed Judges that he seeks to represent) interviewed, mentored, trained, or evaluated other Judges, or that *Plaintiff* prepared or submitted reports to Wizards. Thus, even accepting these allegations as true, and assuming *arguendo* that they provide some support for his outlandish claims (which Wizards does not concede), these allegations are nonetheless entirely irrelevant to the issue of whether *he* was employed by Wizards under the *Labor Code* or FLSA.

Furthermore, Plaintiff alleges that at larger events, Wizards uses a team leader for a team of three to six Judges, and he cites to a January 2010 article (outside the applicable limitations period) regarding "Team Leading" as purported support. [Opp., at p. 3:14-18 citing FAC, ¶ 15, Ex. 7.] Even when viewed in the light most favorable to Plaintiff, however, neither these allegations, nor Exhibit 7 can plausibly support *Plaintiff's* claim that *he* was employed by Wizards. Plaintiff does not allege that *he* was ever a Judge at "larger events," or that *he* otherwise participated in "Team Leading" in any manner whatsoever. Similarly, Plaintiff's argument that "Judges … have required uniforms that they must wear when judging tournaments" (Opp., at p. 3:10-13 citing FAC, ¶ 11, Ex. 6) is unavailing and irrelevant to any issue in Wizards' Motion, as Plaintiff has not and cannot allege that *he* has judged a Magic tournament organized by Wizards or that *he* has ever worn a uniform of any kind, let alone a uniform Wizards required.

Regarding compensation, Plaintiff admits that *he* has never received remuneration of any kind from Wizards. Instead, he contends that Wizards "provides *some Judges* in-kind compensation in the form of product, such as playing cards, special discounts, and sponsorship to events in other cities and countries, for their time worked." [Opp., at p. 4:7-10 Id., ¶16, Ex. 5.] Notably absent is Plaintiff's allegation that *he* received in-kind compensation, or that *he*

REPLY MEMORANDUM IN SUPPORT OF WIZARDS' MOTION TO DISMISS

1    expected such items from Wizards in exchange for acting as a Judge.

2       In addition, many of the above allegations, as well his arguments
3 throughout his Opposition, are based on exhibits that are inconsequential to his
4 claims and cited out of context. For example, Plaintiff cites to Exhibit 3 and
5 characterizes it as Wizard's admission that Judges are the "lifeblood" of Magic.
6 [Opp., at p. 2:12-13 citing FAC, ¶ 14, Ex. 3.] However, Exhibit 3 merely states
7 that *playing Magic "face-to-face* … has been [the] lifeblood of the game since the
8 beginning…" [*See* FAC, Ex. 3 (emphasis added).] Further, Plaintiff's *own*
9 exhibit states that "[y]ou don't need to be a certified judge to judge at many
10 events" (FAC, Ex. 5), and Plaintiff does not allege that Wizards mandated any
11 certification for any of the events that *he* judged or mandated that *he* become or
12 remain a Judge in any capacity. Plaintiff also relies on the "Find a Judge" link
13 present on Exhibit 4 (Opp., at p. 2:5-6 citing FAC, ¶14, Ex. 4), but conveniently
14 ignores that it directs visitors to the Magic Judge Blog operated by a third party.
15 As his *own* Exhibit 4 states, "The Magic Judge Blog is an *independent* site run by
16 Magic judges [;]" it is not a Wizards' site. [*Id.*, Ex. 4 (emphasis added).]

17       Finally, Plaintiff relies heavily on the "Magic Judge Code" set forth in
18 Exhibit 6 to his FAC. [*See, e.g.,* Opp. at pp. 2:10-12, 3:10-13, 3:19-26, 6:21-7:1,
19 14:27-15:3.] This Code lends no credence to his arguments that Wizards was his
20 employer. Again, as explained in Wizards' moving papers and confirmed by the
21 Plaintiff's own attachments, the "Magic Judge Code" is contained *on a third-party*
22 *Wiki page.* [*See* FAC, Ex. 6; *see also* Ex. 3 ("The Magic Judge Blog *is an*
23 *independent site* run by Magic judges…" (Emphasis added).] Plaintiff ignores
24 this inconvenient fact, instead insisting that the Court should overlook the source
25 of the document and accept as true his contradictory attribution of this document
26 to Wizards. [Opp., at p. 2 fn. 2.] While factual allegations are generally accepted
27 as true in ruling on a motion to dismiss, the court need not accept allegations
28 directly contradicted by Plaintiff's own exhibits to the FAC. *See, e.g., Daniels–*

*Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Plaintiff's smoke and mirrors approach in his Opposition underscores his inability to muster even minimal facts to support his conclusory assertion that he is or ever was "employed" by Wizards under California or federal law.  Accordingly, the Court should grant the instant Motion without leave to amend.

## III.  THE FAC DOES NOT RAISE A PLAUSIBLE INFERENCE OF AN EMPLOYMENT RELATIONSHIP UNDER THE LABOR CODE

### A.  There Is No Presumption of Employment Status In This Case

As an initial argument, Plaintiff contends that he is entitled to the presumption of employment status pursuant to California *Labor Code* sections 2750.5 and 3357.  Contrary to his unsupported argument, Plaintiff is entitled to no such presumption.  First, *Labor Code* section 2750.5 is clearly inapplicable, as its plain language provides a rebuttable presumption of employment status only when "a worker [is] performing services for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the *Business and Professions Code*, or [when a worker is] performing such services for a person who is required to obtain such a license."  Plaintiff does not, and cannot, claim that Wizards required him to obtain a license under the *Business & Professions Code*.  The presumption simply does not apply to this case.

With respect to *Labor Code* section 3357, that provision merely states, in pertinent part, that: "Any person rendering service for another, other than as an independent contractor ... is presumed to be an employee."  California appellate courts have interpreted Section 3357 to create a presumption *that a service provider* is presumed to be an employee unless the principal proves otherwise.  It typically applies when an employer contends that a putative employee providing services is classified as an independent contractor.  *See, e.g., Yellow Cab Cooperative, Inc. v. Workers' Comp. Appeals. Bd.*, 226 Cal.App.3d 1288, 1292-1293 (1991); *Bain v. Tax Reducers, Inc.*, 219 Cal. App. 4th 110, 138 (2013).

7

Plaintiff does not allege to have been classified or treated by Wizards as an independent contractor rather than an employee, and thus his reliance on *Labor Code* section 3357 is misplaced. Rather, the central issue here is whether Plaintiff rendered services for Wizards that are compensable under California (and federal) law. As addressed in Wizards' moving papers and herein, Plaintiff has failed to state facts sufficient to plausibly support his contention that he rendered services for Wizards that are compensable. Nevertheless, Plaintiff continually cites to conclusory and otherwise irrelevant allegations and exhibits to support his unfounded claim that he and others provided compensable services. And yet again, Plaintiff lists various duties that he alleges certain Judges are required to perform, but fails to allege that *he himself* engaged in such activities. Simply put, Plaintiff has failed to allege *facts* to support his contention that *he* provided compensable services to Wizards for nearly two decades. As such, he fails to establish an entitlement to a presumption of employee status under Section 3357.[1]

### B. Plaintiff Has Not Adequately Pled That Wizards Exercised Control Over His Wages, Hours, or Working Conditions

Plaintiff acknowledges that the three-party *Martinez* test governs the Court's analysis as to whether Plaintiff has alleged a plausible claim under the California *Labor Code*, which requires an employee-employer relationship. As noted in Wizards' moving papers, the first of three prongs under *Martinez* looks to whether the putative employer exercises control over the putative employee's wages, hours, or working conditions. *Martinez*, 49 Cal.4th at 63. In arguing that he has adequately alleged facts to meet this first prong of the analysis, Plaintiff relies heavily on *Betancourt v. Advantage Human Resourcing, Inc.*, 2014 WL 4365074 (N.D. Cal. Sept. 3, 2014) (*Betancourt*). However, a plain reading of

---

[1] Plaintiff's discussion of DLSE guidance related to "Volunteers" (Opp., at 7:14-8:4) is inapposite for the same reason. To that end, Plaintiff presumes that he is providing "personal services" to Wizards who is treating him as a volunteer within the meaning of the *Labor Code*, when Plaintiff has failed to allege the foundational facts needed to support that conclusion.

REPLY MEMORANDUM IN SUPPORT OF WIZARDS' MOTION TO DISMISS

*Betancourt* confirms that it does not apply here.

In *Betancourt*, the issue was whether the time spent by the plaintiff (a staffing agency employee) interviewing at a potential worksite employer under strict guidelines and at the express direction of the staffing agency was compensable under the *Labor Code*. Under the facts of that case, the court determined that Plaintiff's allegations were sufficient to survive a motion to dismiss. To that end, the allegations in the complaint established the following:

> Defendant Advantage is a temporary staffing agency. Compl. ¶ 14. … Advantage interviews prospective workers, sends them to a "new hire" orientation, has new hires sign a form that acknowledges that the parties are entering into an employment arrangement, and requires them to complete traditional employment paperwork, including W–4 and I–9 forms. Id. ¶¶ 17–20. Upon becoming an Advantage "employee," a person becomes eligible to interview for positions with Advantage's clients. Id. ¶ 22. [¶] Advantage controls the manner in which temporary workers interview with clients. Id. ¶ 16. Advantage decides which workers interview with which clients, and sets the dates and places of the interviews. Id. ¶ 23. Advantage also modifies its temporary workers' resumes to display only Advantage's contact information. Id. ¶ 24. In addition, Advantage forbids its workers from ever directly contacting its clients. Id. ¶ 26. [¶] If, after an interview, the client wishes to hire the worker, Advantage negotiates the terms, conditions, and salary of the client-worker relationship. Id. ¶ 25. If the client does not hire the temporary worker, Advantage retains sole discretion to send that worker to another client. Id. ¶ 27.
>
> Betancourt underwent Advantage's hiring process in late 2011. Id. ¶ 31. After Betancourt successfully interviewed with Advantage and signed an employment agreement, Advantage directed Betancourt to interview with UTLS Default Services, LLC ("UTLS"), one of Advantage's clients. Id. ¶ 32. Before the interview, Advantage altered Betancourt's resume to show only Advantage's contact information. Id. ¶ 33. The interview lasted one hour. Id. ¶ 37. After the interview and as Advantage required, Betancourt called Advantage to report how the interview went. Id. ¶ 34. Subsequently, Advantage acted as intermediary between Betancourt and UTLS, calling to inform him of his success at the interview, as well as of his pay rate and start-date.

REPLY MEMORANDUM IN SUPPORT OF WIZARDS' MOTION TO DISMISS
FPDOCS 31467189.1

1   *Betancourt*, 2014 WL 4365074, at *1.

2       As a review of the FAC in this case makes clear, *Betancourt* is in no way

3 analogous to the facts and allegations at issue here. Nevertheless, Plaintiff

4 attempts to draw an analogy using the Judge's own certification program, which

5 merely certifies that an individual has a certain level of knowledge with respect to

6 the Magic game.[2] Plaintiff's argument is equivalent to contending that a computer

7 programmer who a company like Microsoft certifies as competent after

8 demonstrating proficiency with a specific software program somehow transforms

9 that individual—who likely works for others—into a Microsoft employee. This

10 conclusion defies logic, and it is simply not the law. Moreover, the plaintiff in

11 *Betancourt* included a number of factually detailed allegations regarding control

12 exerted by the staffing company over the interview process with UTLS and the

13 worksite employer, rather than the unsupported conclusory allegations that

14 permeate the FAC in this case. Simply put, *Betancourt* is inapposite.

15       Plaintiff's reliance on the Magic Judge Code (which his own Exhibit shows

16 comes from a third-party Wiki site unaffiliated with Wizards) and allegations of

17 the purported activities performed by *other* Judges with no claim they apply to

18 Plaintiff, does not alter this analysis. [*See* Section II, *supra*.] Similarly, Plaintiff's

19 attempt to equate suspension or decertification of a judge to being "fired" in an

20 employment context is functionally equivalent to arguing that Yelp's ability to

21 suspend or close a consumer's account constitutes the right to fire—an argument

22 recently rejected in this district. *See, e.g., Jeung*, 2015 WL 4776424, at *2

23 (alleging that Yelp involuntarily closed plaintiffs accounts was insufficient to

24 plausibly state that they were "fired" for purposes of the FLSA).

25       In total, Plaintiff devotes nearly five pages of his Opposition to the first

26 prong of the *Martinez* analysis, but does so solely by regurgitating the same

27

28   [2] This is no different than an organization certifying an individual as competent to perform CPR. Certifying minimal competency does not equate to an employment relationship.

REPLY MEMORANDUM IN SUPPORT OF WIZARDS' MOTION TO DISMISS

conclusory and irrelevant facts set forth in the FAC. He has not, and cannot, allege facts to support his conclusion that Wizards exercised control over his wages, hours, or working conditions. Wizards' Motion should be granted.

**C.**    **Plaintiff Has Not Plausibly Alleged that Wizards Suffered or Permitted Him to Work**

Plaintiff's argument that he has adequately alleged that Wizards "suffered or permitted him to work" also fails. The central issue for this prong of the *Martinez* test is whether Plaintiff has plausibly alleged that Wizards "had the power to either cause him to work or prevent him from working." *Futrell v. Payday Cal., Inc.* 190 Cal.App.4th 1419, 1434 (2010). In his Opposition, Plaintiff again merely repeats his conclusory allegations from the FAC, merely contending that Wizards "has both the power to allow individuals to work as certified Judges and to prevent them from acting as Judges by suspending or decertifying them," with no specific facts. [Opp., at p. 14:3-10.] Wizards has already explained precisely why Plaintiff's allegations of a Judge certification process (which he does not even allege that *he* completed) and the ability to decertify are not equivalent—as a matter of law—to "hiring" or "firing" an employee within the meaning of the *Labor Code*. Nothing in Plaintiff's Opposition changes this analysis in any material way. Simply put, Plaintiff has failed to allege facts supporting the second prong of the *Martinez* analysis.

**D.**    **Plaintiff Cannot Plausibly Allege That He Was "Engaged" By Wizards As A Common Law Employee**

Repeating many of his same arguments, Plaintiff further contends that he has sufficiently alleged that he was engaged by Wizards to meet the third prong of the *Martinez* analysis. As the purported support for this conclusion, Plaintiff states that he has adequately pled numerous "factual examples" indicating that Wizards has a right to control the manner in which Judges oversee tournaments. An examination of the FAC, however, shows that he has failed to do so.

11

First, Plaintiff fails to allege that *he* ever Judged a Wizards tournament, rather than an independent store level event. Moreover, in his 18 years of being a Magic Judge, Plaintiff fails to allege that he as ever spoken with or been solicited by Wizards to perform any service for Wizards. Plaintiff yet again relies on his characterizations of conclusory assertions as "factual examples." He cannot turn conclusions into facts, particularly where Plaintiff's FAC notably fails to allege that the vast majority of these allegations have any application to *him* (as opposed to other unnamed Judges for tournaments or other larger events). Finally, Plaintiff's reliance on a "Magic Judge Code," which again his own exhibit confirms is from a third-party website, is misplaced. [*See* FAC, Ex. 6; Ex. 3 ("The Magic Judge Blog is an independent site run by Magic judges…"].

Plaintiff has not and cannot allege facts that support his absurd argument that participating in a hobby at local comic book stores or other locations with minimal or no connection with Wizards can somehow constitute an employment relationship with the manufacturer of a card game marketed to girls and boys 13 and older. Plaintiff's argument to the contrary is akin to a rules arbitrator of a local poker tournament claiming employment-status with the manufacturer of the playing cards. For all of these reasons, Wizards' Motion should be granted.

## IV.  PLAINTIFF ALSO FAILS TO PLEAD FACTS TO SUPPORT AN EMPLOYMENT RELATIONSHIP UNDER THE FLSA

As stated in Wizards' moving papers, under the FLSA, putative employees may only seek redress from "employers." 29 U.S.C. § 216(b). Fundamental to this analysis is the performance of "work" under the FLSA. As stated above, an activity is "work" within the meaning of the FLSA only if it is "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal*, 321 U.S. at 598; *see also Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 295 (1985) (*Alamo*) ("While the statutory definition [of "employee"] is exceedingly broad . . . it does have its limits. An

REPLY MEMORANDUM IN SUPPORT OF WIZARDS' MOTION TO DISMISS
FPDOCS 31467189.1

individual who, 'without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit,' is outside the sweep of the Act.")

In this case, Plaintiff does not and cannot dispute that an employer-employee relationship, as well as performance of compensable "work," is necessary in order to state a plausible claim under the FLSA. Here, however, Plaintiff has failed to plead sufficient facts to establish that deciding to pursue a hobby plausibly creates an employer-employee relationship with Wizards for the myriad reasons addressed at length in Wizards' moving papers and herein.

In an attempt to save his deficiently pled complaint, Plaintiff relies heavily on *Alamo*, 471 U.S. 290, *Liebesman v. Competitor Group Inc.*, 2015 WL 2195093 (E.D. Mo. May 11, 2015), and an Opinion Letter from the Department of Labor—all of which predominantly pertain to situations where a putative employer alleges that an individual admittedly providing otherwise compensable services to various defendants fits within the "volunteer" exception to compensable work under the FLSA. Plaintiff's reliance on such authority in this context is misguided, because Wizards has invoked the "volunteer" exception. Rather, the issue in this Motion is whether Plaintiff has plausibly alleged that he was employed by Wizards and performed compensable "work" within the meaning of the FLSA.

In this case, the FAC is devoid of factual allegations supporting the "primary benefit" or "required by the employer" elements of the purported "work" that Plaintiff now seeks compensation for pursuant to the FLSA. *Tennessee Coal*, 321 U.S. at 598. Without "work," there can be no employer-employee relationship. *Ceja-Corona v. CVS Pharm. Ins.*, 2013 WL 3282974 (E.D. Cal. July 2, 2013) (granting Rule 12(b)(6) motion to dismiss where Plaintiff failed to allege sufficient facts to demonstrate that donning was "necessary to the principal work performed" to constitute compensable "work" time under the Portal-to-Portal Act). Moreover, despite his best efforts, Plaintiff's allegations fall far short of

REPLY MEMORANDUM IN SUPPORT OF WIZARDS' MOTION TO DISMISS

1  demonstrating that the economic reality test weighs in favor of an employer-
2  employee finding in the unique context of this case. To that end, the Ninth Circuit
3  has held that "employees" include those workers "who as a matter of economic
4  reality are dependent upon the business to which they render service." *Real v.*
5  *Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979); *see also*
6  *Charles v. Burton*, 169 F.3d 1322, 1328 (11th Cir. 1999) (finding that a business
7  entity employs an individual when the economic reality is such that the individual
8  depends on the entity); *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1538 (7th Cir.
9  1987) (holding that the degree to which the alleged employee depends on the
10 particular business determines employee status). As a Magic Judge for nearly two
11 decades without receiving any remuneration from Wizards whatsoever, Plaintiff
12 clearly was not dependent on Wizards for any source of income. This wholly
13 distinguishes this case from *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1076 (N.D.
14 Cal. 2015), another case upon which Plaintiff relies.

15      Moreover, Plaintiff urges the Court to disregard the four *Bonnette* factors
16 addressed at length in Wizards' moving papers, despite conceding that "courts
17 often apply *Alamo's* economic realities test by examining" those factors. [Opp., at
18 18:5-18.] Applying *Bonnette* here would presume that central issue is whether
19 Plaintiff was a Wizards volunteer or a Wizards employee, but that is not the case.
20 Rather, Plaintiff fails to plausibly allege he peformed any compensable services
21 for Wizards, rendering the *Bonnette* factors irrelevant and showing no
22 employment relationship existed on the FAC's allegations. Wizards has already
23 explained in its Motion why these allegations cannot plausibly support a finding
24 of employment status under *Bonnette*, and Plaintiff's Opposition establishes
25 nothing to the contrary. Instead, he recycles the same deficient arguments
26 regarding Wizards' purported ability to hire, supervise, fire, and control Judges—
27 conclusory assertions unsupported by factual allegations as to Plaintiff.

28 ///

REPLY MEMORANDUM IN SUPPORT OF WIZARDS' MOTION TO DISMISS

The only new argument Plaintiff raises in this aspect of the Opposition is that Wizards can document participation in tournaments, and that Judges write reports of their Judging experience as well as reviews of other Judges, which are then posted on a website. [Opp., at p. 21:7-15.] However, this is a far cry from maintenance of "employment records" by Wizards—one of the four *Bonnette* factors. Indeed, maintaining this type of data is no different from registering on Yelp's website and publishing reviews of local businesses, which does not support an employer finding. *Jeung*, 2015 WL 4776424, at *1-2.

For all of these reasons, Plaintiff has not and cannot plausibly allege that he was employed by Wizards or performed compensable "work" for Wizards within the meaning of the FLSA. Accordingly, Wizards' Motion should be granted.

## V.   LEAVE TO AMEND SHOULD BE DENIED

Wizards' Motion should be granted without leave to amend as Plaintiff has already had the benefit of amending his complaint in response to the initial motion to dismiss, and he fails to set forth any additional facts that he can allege in support of any of his claims. If such facts existed, Plaintiff should have included them in the FAC or explained *how* he can amend to plausibly state a claim.

## VI.   CONCLUSION

For all of the reasons stated in Wizards' moving papers and herein, the Court should grant the instant Motion, without leave to amend.


DATE: February 23, 2016             FISHER & PHILLIPS LLP


                        By:   /s/ Shaun J. Voigt
                              KARL R. LINDEGREN
                              SHAUN J. VOIGT
                              Attorneys for Defendant,
                              WIZARDS OF THE COAST, LLC

REPLY MEMORANDUM IN SUPPORT OF WIZARDS' MOTION TO DISMISS
FPDOCS 31467189.1

# PROOF OF SERVICE
(CCP § 1013(a) and 2015.5)

I, the undersigned, am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of FISHER & PHILLIPS LLP and my business address is 2050 Main Street, Suite 1000, Irvine, California, 92614.

On **February 23, 2016**, I served the foregoing document entitled **REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT WIZARDS OF THE COAST LLC'S MOTION TO DISMISS PLAINTIFF PAUL YALE'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(b)(6)**, on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

### SEE ATTACHED MAILING LIST

☐    **[by MAIL]** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☒    **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☒    **FEDERAL** - I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **February 23, 2016** at Irvine, California.

Katie Costantino                         By: _Katie Costantino_
_____                      _____
Print Name                                    Signature

FPDOCS 31467189.1

# MAILING LIST

| David Borgen, Esq.<br>GOLDSTEIN, BORGEN, DARDARIAN & HO<br>300 Lakeside Drive, Suite 1000<br>Oakland, CA 94612<br>Telephone:  (510) 763-9800<br>Facsimile:   (510) 835-1417<br>Email: dborgen@gbdhlegal.com | Attorneys for Plaintiff,<br>PAUL YALE |
|---|---|
| Michael Malk, Esq.<br>MICHAEL MALK, ESQ, APC<br>1180 S. Beverly Drive, Suite 302<br>Los Angeles, CA 90035<br>Telephone: (310) 203-0016<br>Facsimile: (310) 499-5210<br>Email: mm@malklawfirm.com | Attorneys for Plaintiff,<br>PAUL YALE |